## Albert R. Sharp's Appeal.

---

### Isabella Sharp's Estate.

The discretion of the orphans' court to order a testamentary trustee to give security for the faithful execution of his trust will not be reversed, ex- cept for an abuse of the discretion.

(Argued May 19, 1887.   Decided May 30, 1887.)

July Term, 1887, No. 99, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.   Ap- peal from the Orphans' Court of Lancaster County to review a decree directing a testamentary trustee to give security.   Af- firmed.

The case was heard on petition for citation and answer.   No replication was filed.

The facts are stated in the following opinion of the court be- low, by PATTERSON, J.:

The petitioner, a brother of the said trustee, and who is the *cestui que trust* of the fund in trust, presented in court and filed his petition March 19, 1886, praying for a citation to Albert R.

NOTE.—For the power to require bond from executors, see note to Col- ton's Appeal, 2 Sad. Rep. 477.

Sharp, his trustee, that he give security as such trustee, or that he be dismissed.

To the citation, the said trustee put in his answer denying the allegations set forth in the petition. Both petitioner and respondent took depositions. The witnesses called (testifying for the parties respectively) were the petitioner in support of his petition, and the respondent in support of his answer filed. It appears that Albert R. Sharp is a testamentary trustee, and has given no security for the trust which he assumed. The amount of said trust fund, as appears by his account, confirmed nisi March 16, 1885, and which became confirmed absolutely, is $2,252.61—to the net income of which the *cestui que trust* is entitled during his lifetime.

The records submitted to the court and the depositions filed show that after the testator's decease (who was the mother of both the trustee and the *cestui que trust*), the former took to his own house in Harrisburg his brother, the *cestui que trust,* who is a cripple and unable to perform manual labor; took him there in March, sometime, of 1884, and kept him there until sometime in October of that year. From there he went to the Lancaster County Hospital, where he has remained ever since. He testifies that he went there only because he had no other place to go to, and that he was choked out of the house of his brother, the trustee. This latter the trustee emphatically denies under oath. He answers, however, to a question asked by his own counsel,—to wit, "Is Charles R. Sharp a person whom it would be pleasant or desirable to have in a private house?" "He is not; he is very rough in his habits and ways; he is not cleanly."

This and other facts made to appear show that the feeling between these brothers is not that of warm, brotherly affection. Besides, it appears that the trustee is not a person of much estate; he is a cabinet maker and testifies that he has no debts. That he is mismanaging the estate in his hands does not very clearly appear. Yet it does appear that a note, with interest, due the estate at the death of the testatrix and amounting to over $2,000, was paid in April of 1886, and when asked on the 13th of December, 1886, at the time of taking his deposition,—*viz.,* Question: "How is the trust money of which you are trustee invested?" He answered: "It is not invested, it is in bank; in the Mechanics' Bank of Harrisburg; I think it is deposited there as executor;" "I have a bank book;" and being asked

"How much is it?" he answered: "That I cannot say, unless I have my book—it is all there; I am not the owner of any real estate."

Further, the account filed by the executor and trustee on February 12, 1885, and confirmed March 16, 1885, shows that the accountant charged commissions of 5 per cent on both personal and real estate proceeds— the latter amounting to $1,000; that is, the purchase money of realty amounted to that sum. Now such transactions may not actually be wasting the property or estate under his charge, in the exact sense of the term, but it is certainly "mismanaging the property." And the act of assembly expressly says: if a committee or trustee is wasting or mismanaging the property or estate under his charge, or for any reason the interests of the estate or property are likely to be jeopardized by the continuance of any such trustee, or when such trustee, etc., is or is likely to prove insolvent, etc., the court may issue a citation requiring him to respond to the same and abide the order of the court. On the whole the court is of the opinion that enough has been shown to justify an order that this trustee shall give bail to secure the faithful discharge of his trust.

Therefore, now, to wit, January 15, 1887, the court orders and decrees that Albert R. Sharp, trustee, etc., shall give a bond with security, to be approved by the court, in double the amount of the trust estate in his hand, for the faithful execution of his trust, otherwise to be dismissed as such trustee. Bond to be given on or before the 5th day of February next.

The assignment of error specified the action of the court in making the above decree.

*George Nauman,* for appellant.—By the act of March 29, 1832, 1 Purd. 558, pl. 249, there may be security required when it shall be made to appear that an executor is wasting or mismanaging the estate or property under his charge, or is likely to prove insolvent, or has neglected or refused to exhibit a true and perfect inventory, or render full and just accounts.

By the act of May 1, 1861, 1 Purd. 560, pl. 257, when it shall be made to appear that an executor is mismanaging the property or estate under his charge, or that for any reason the interests of the estate or property are likely to be jeopardized

by his continuance, or when he is likely to prove insolvent, or has neglected to exhibit a true and perfect inventory, or render full and just accounts, security may be required or removal made.

In either case, however, and under either act, there must be citation, answer, and proof; and the power of the court is limited to the causes named in the acts. Cohen's Appeal, 2 Watts, 175; Webb v. Dietrich, 7 Watts & S. 401.

It will be observed that every material allegation of the petition was denied by the answer; and, there having been no replication filed, the answer must be taken as absolutely true. Kellberg's Appeal, 86 Pa. 129.

In a proceeding under the acts referred to above, it must clearly appear that a case was made out under it, and that the discretion of the court was properly exercised. Parsons's Appeal, 82 Pa. 465.

"Insolvency is the state of a person who, from any cause, is unable to pay his debts in the ordinary or usual course of trade." Levan's Appeal, 112 Pa. 294, 3 Atl. 804.

The testator chose the appellant to execute her will; she knew that she could trust him, and asked no security; and the court cannot do it on a case like this. Cohen's Appeal, 2 Watts, 175; Webb v. Dietrich, 7 Watts & S. 401; Harberger's Appeal, 98 Pa. 29.

*W. R. Wilson* and *H. M. Houser,* for appellee.—The case was heard by the court below on its merits, and the decision by said court will not be altered "in the supreme court for anything short of palpable injustice." Nicholson's Appeal, 20 Pa. 50.

The strong language found in Parsons's Appeal, 82 Pa. 465, was predicated upon proceedings based solely upon the act of May 1, 1861, authorizing the summary removal of such a trustee.

Considering that he may at any time resign or relinquish his trust, the decree requiring him to give security ought not to be such a hardship as to excuse him from complying with our reasonable request. M'Kennan's Appeal, 1 Grant Cas. 364.

"Nothing but some controlling necessity will justify the retention of a fiduciary whose interests are inharmonious with those of the *cestui que trust* or disadvantageous to them, and

whose conduct shows it." Scott, Intestate Laws, Revised ed. p. 266; Kellberg's Appeal, 86 Pa. 129.

A trustee is removable when his continuance in office, although not jeopardizing the trust, might probably work disadvantage or inconvenience in the *cestui que trust*. Hilles's Estate, 9 W. N. C. 421.

Cohen's Appeal, 2 Watts, 175, and Webb v. Dietrich, 7 Watts & S. 401, are cases not in point. In those cases the application was, not to make the trustee give bail as in the case in hand, but to remove them at once. The supreme court said this could not be done.

Nor is Harberger's Appeal, 98 Pa. 29, in point. In that case the application requiring the executor and trustee to give bail seemed to have been based solely upon the fact that he lived in Philadelphia; and in neither of those cases was there proof of inharmonious and antagonistic relations between trustee and *cestui que trust,* as exists in this case.

PER CURIAM:

It may be conceded that this evidence does not present a flagrant case of mismanaging the estate; yet the facts stated in the opinion of the learned judge do present some reason why the interests of the estate should be more adequately protected. We see no such abuse of the discretion wisely placed in the court, as to require its action in this case to be reversed.

Decree affirmed and appeal dismissed, at the costs of the appellant.